AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**SEALED**

Case No.    **1:26-mj-00026-SKO**

*Defendant(s)*

**FILED**

**Mar 18, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of _____ in the

_____ District of _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| | |

This criminal complaint is based on these facts:

❏ Continued on the attached sheet.

_____
*Cortland Collins*
*Complainant's signature*

_____
*Printed name and title*

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim P. 4.1 and 41(d)(3) before me this _____ day of March, 2026.

Date:    March 13, 2026

_____
*Sheila K. Oberto*
*Judge's signature*

City and state:    _____

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GUILLERMO CATZALCO,<br><br>　　　　　　Defendant. | CASE NO.<br><br>AFFIDAVIT OF SPECIAL AGENT CORTLAND G. COLLINS |

I, Cortland G. Collins, being sworn, depose and state the following:

## I.　　INTRODUCTION

1.　　This Affidavit is in support of an arrest warrant for Guillermo CATZALCO (hereinafter, "CATZALCO") for violation of Title 18, United States Code, Section 922(g)(1), felon in possession of a firearm and ammunition.

2.　　The information contained in this Affidavit is based upon my personal observations and training and, where noted, information related to me by other law enforcement officers and/or agents.

3.　　As stated further in this Affidavit, law enforcement officers have gathered evidence to support probable cause that **CATZALCO** unlawfully possessed a firearm and ammunition.

## II.　　AFFIANT'S BACKGROUND

4.　　I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) where I have been employed since August of 2021.  I am currently assigned to the ATF Fresno Field Office, specializing in investigations involving the illegal possession of firearms and other federal offenses involving firearms.  In 2021, I completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia, in which I received the Director's Leadership Award.  In 2022, I completed Special Agent Basic Training (SABT) at the ATF National Academy, at FLETC.

5. Prior to my employment with ATF, I was a sworn peace officer in the state of California beginning in December of 2015. During that time, I was employed by the Fresno County Sheriff's Office (FSO) where I was assigned as a patrol deputy throughout the county. I was assigned to the Detective Bureau in February of 2017, where I worked on the Fresno County Multi Agency Gang Enforcement Consortium (MAGEC). While at MAGEC, I conducted and assisted in complex gang investigations with other local, state, and federal agencies. These investigations involved crimes including homicide, unlawful firearm possession, assaults, robbery, drug trafficking, firearms trafficking, murder for hire, burglaries, and other crimes committed by gang members throughout Fresno County and surrounding areas.

6. Prior to my employment with the Fresno County Sheriff's Office, I served in the United States Marine Corps as an Infantry Rifleman for four years. During my service, I was attached to Marine Corps Special Operations Command (MARSOC) for approximately two years. I deployed overseas on two separate occasions in support of the 13th Marine Expeditionary Unit (MEU), Operation Lantern Piston in the Philippine Islands, Operation Enduring Freedom in Afghanistan, the 31st MEU, and Korean Defense. During my time overseas, I carried numerous weapons systems in hostile environments. Additionally, I participated in the training of over 200 Philippine Marines in combat triage, urban tactics, marksmanship fundamentals, and proficient weapons employment. I currently hold a Bachelor of Science degree in Criminology and Restorative Justice, and graduated Magna Cum Laude from Fresno Pacific University.

### III.    PROBABLE CAUSE

7. On June 28, 2022, at approximately 2:20 p.m., Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Kristin Loeffler and I responded to the Firebaugh Police Department to assist officers in an investigation regarding suspected unlawful possession, manufacturing, and trafficking of firearms by Guillermo CATZALCO. The investigation was initiated when Firebaugh Police Department Officer Juan Castillo notified agents that he responded to a domestic violence call at an apartment, located at 1660 Allardt Drive, Firebaugh, California, 93662, within the Eastern District and State of California.

COMPLAINT AFFIDAVIT                    2

8.    While at 1660 Allardt Drive, Officer Castillo spoke with a female (hereinafter, "Individual 1"). Individual 1 identified herself as CATZALCO's girlfriend. She informed Officer Castillo that the apartment was leased exclusively in her name and that she had access to all rooms. Individual 1 stated that CATZALCO possessed two firearms inside the apartment bedroom where she and CATZALCO slept.  Individual 1 provided verbal consent to Officer Castillo to conduct a search of the residence for firearms. Later, when SA Loeffler and I arrived at 1660 Allardt Drive, Individual 1 again provided verbal consent to search the residence. Individual 1 also signed a consent form in my presence, however, this consent form was not booked into evidence.

9.    A search of the bedroom occupied by CATZALCO and Individual 1 yielded a Glock-style handgun in plain view on top of a drawer next to the bed. This Glock-style handgun possessed neither a serial number nor any other identifying marks. When officers asked Individual 1 where the other firearm was located, she pointed towards a black gun case located within the bedroom closet. Officers opened the gun case; inside, they discovered a 30-round and 40-round capacity rifle magazine, as well as an AR-style rifle. Like the Glock-style handgun, this AR-style rifle possessed neither a serial number nor any other identifying information.

10.    Based on my training and experience, I recognized these firearms to be consistent with "Privately Manufactured Firearms" (PMFs). PMFs are firearms which have been completed, assembled, or otherwise produced by an individual rather than a licensed manufacturer; they are made without a serial number given by a licensed manufacturer at the time of production. PMFs are commonly referred to as "ghost guns" because they can be extremely difficult or impossible to trace without any form of serialization or identifying information. The Glock-style PMF handgun and AR-style PMF rifle are pictured below, respectively (continues on next page):

///

///

///

///

///

COMPLAINT AFFIDAVIT                                    3





11.     On the floor of the bedroom, officers located a duffle bag containing empty packages, including one addressed to CATZALCO at 2060 Elwin Way, Modesto, California 95350 with a return addressee of "80 Percent Arms." The packing slip associated with the package provided item descriptions for two items: "LOWER-AR 15-BILLET-V2" and "LOWER-AR 15-BILLET-RAW."

12.     I am aware based on my training and experience that "80 Percent Arms" is an online vendor specializing in the sale of firearm components and tools, including "80-percent lower receivers" and "jigs."  A fully functioning "lower receiver" is a component of a firearm which houses other various, critical components, including the trigger, hammer, safety, disconnector, and firearm magazine. The fully-functioning lower receiver is then attached to the upper receiver—the part of the firearm that contains the barrel and bolt—to create a functioning firearm.  Based on my training and experience, I know that an "80-percent lower receiver" (or simply, "80-percent receiver") is a lower receiver that has not yet been machined into a fully-functioning lower receiver. I am also aware based on my training and experience that 80-percent receivers are easily converted to fully-functioning lower receivers with the

COMPLAINT AFFIDAVIT                                   4

use of "jigs." Jigs consist of metal or plastic plates, bolts, and drill bits, and provide a builder with the tools, measurements, and guides for converting an 80-percent receiver into a fully-functioning lower receiver.  As such, based on my training, experience, and observations of the return addressee and packing slip information, I formed the opinion that the package from "80 Percent Arms" found in the bedroom previously contained two 80-percent receivers which CATZALCO could machine into a fully-functioning lower receiver with the use of a jig.

13.    Individual 1 thereafter notified officers that CATZALCO spends a significant amount of time in the attached exterior storage room, adjacent to the front door on the south side of the apartment building. Individual 1 confirmed with officers that she had access to the storage room and provided verbal consent for a search of the space.  The search of the storage room also yielded 1 live round of .223 caliber ammunition and three 80-percent AR-style lower receivers. I observed tool markings on one of the 80 percent AR-style lower receivers which I recognized based on my training and experience to be consistent with the "milling" process.[1] Tools consistent with the firearm manufacturing process were also located in the storage room which, including jigs, a router, a tap and die set, and a drill press. Also among the items located in the storage room was a North American Arms Inc., .22 caliber revolver, with serial number G43490. The firearm was deconstructed to its component parts—including the frame, cylinder, trigger assembly, and spring—all of which were kept together in a plastic container.

14.    The live round of .223 ammunition located in the storage area is depicted below:



---

[1] I know "milling" to describe the act of using a tool (drill press, router, or other equipment) to remove material in order to allow a firearm trigger group to be installed. This term "milling" is commonly used to describe the manufacturing process of turning an 80% or unfinished lower receiver into a fully functional firearm receiver.

15. Individual 1 thereafter notified officers that she also discovered a tan bag next to the bed where CATZALCO sleeps; this bag contained a box of .357 caliber ammunition with 26 rounds of live ammunition—including 24 rounds of Black Hills .357 caliber ammunition in the manufacturer's box, one round of Federal .357 caliber ammunition, and one round of .38 caliber ammunition within the same box).

16. Individual 1 stated that CATZALCO possesses firearms and methamphetamine within the apartment. Individual 1 stated she has observed CATZALCO working on his firearms in their bedroom with different types of power tools. For example, Individual 1 related that she has observed CATZALCO close the bedroom door and heard noises consistent with the operation of power tools from within; shortly after the noise stopped, she would open the door and observe a completed rifle in the bedroom.

17. In light of officers locating (i) a PMF Glock-style handgun, a PMF AR-style rifle, and packaging material for 80-percent lower receivers in the bedroom occupied by CATZALCO, (ii) milled and un-milled 80-percent lower receivers in the storage room, and (iii) tools consistent with milling in the storage room, this statement by Individual 1 is significant for at least two reasons. First, it tends to demonstrate that CATZALCO had access to the storage room.  Second, it tends to corroborate Individual 1's earlier statement that CATZALCO spent a substantial amount of time in the storage room—the same room where officers found a deconstructed, serialized North American Arms Inc., .22 caliber revolver, as well as live .223 ammunition.

18. Based on my training and experience, as well as my examination of the physical evidence in this case and its relationship to Individual 1's statements, the location of the deconstructed, North American Arms Inc., .22 caliber revolver and .223 ammunition in the storage room is particularly significant. First, both the deconstructed nature of the North American Arms Inc., .22 caliber revolver and its location in the storage area tend to indicate that CATZALCO had access to the revolver as either spare parts or as a future project to build. Second, I know based on my training and experience that .223 ammunition is commonly used in AR-style rifles, including the PMF AR-style rifle located in the bedroom; therefore, I believe that CATZALCO had access to the ammunition in the storage area for use

COMPLAINT AFFIDAVIT                                    6

in the PMF AR-style rifle.

19.    CATZALCO was transported from 1660 Allardt Drive to the Firebaugh Police Department. At 12:34 p.m., Officer Castillo provided CATZALCO with the Miranda Advisement and he agreed to provide a statement. CATZALCO admitted to possessing the two firearms located within the bedroom at 1660 Allardt Drive. CATZALCO also admitted to building firearms, stating that he repairs firearms for his friends for extra income. CATZALCO stated he did not know that he was prohibited from possessing firearms due to being a convicted felon.

20.    SA Loeffler and I thereafter arrived at the Firebaugh Police Department at 4:04 p.m. and interviewed CATZALCO.  CATZALCO claimed ownership for the ammunition located by law enforcement. CATZALCO admitted building the Glock-style PMF handgun located in the bedroom, as well as four complete AR-style PMF rifles—including the AR-style PMF rifle located within the gun case. When asked about the outstanding AR-style rifles, CATZALCO admitted to giving one to his father and the others to friends of his. CATZALCO refused to give any further information as to where the outstanding firearms were located.

21.    CATZALCO additionally admitted to "milling" the AR-style lower located by officers in the storage room. CATZALCO claimed ownership over the drill press, Dremel tool, and router that were recovered from the storage room, but clarified that he only used the router to "mill" the 80-percent receivers into fully-functional receivers.  During the interview, CATZALCO admitted to being a Norteno street gang member, but stated he is not involved in gang politics anymore. However, CATZALCO insisted he would be safe in Norteno housing inside the jail, as well as general population in the jail.

22.    I reviewed CATZALCO's record of arrest and prior convictions ("RAP"). CATZALCO's RAP indicated that he has suffered numerous felony convictions in the State of California, punishable by more than a year of imprisonment. Specifically, CATZALCO's RAP included the following felony convictions:

a)    On August 21, 2001, CATZALCO was convicted of a felony violation of California Penal Code section 245(a)(1)—assault with a deadly weapon other than a firearm—in

COMPLAINT AFFIDAVIT                                    7

Stanislaus County Superior Court case #1016547 and was sentenced to 180 days' jail and 36 months of probation;

b)    On July 21, 2003, CATZALCO was convicted of a felony violation of California Vehicle Code section 10851(a)—theft of a vehicle—in Stanislaus County Superior Court case #1060653 and was sentenced to 180 days' jail and 36 months of probation;

c)    On September 15, 2003, CATZALCO was convicted of a felony violation of California Penal Code section 459—burglary—in Stanislaus County Superior Court case #1062380 and was sentenced to 365 days' jail and 36 months' probation;

d)    On July 01, 2005, CATZALCO was convicted of a felony violation of California Penal Code section 12021(a)—felon in possession of a firearm—in Stanislaus County Superior Court case #1093826 and was sentenced to 16 months' prison in the California Department of Corrections and Rehabilitation;

e)    On August 19, 2009, CATZALCO was convicted of a felony violation of California Penal Code sections 69—resisting an executive officer—and 12021(a)—felon in possession of a firearm—in Stanislaus County Superior Court case #1257324 and was sentenced to two years' prison in the California Department of Corrections and Rehabilitation; and

f)    On October 13, 2015, CATZALCO was convicted of a felony violation of California Vehicle Code section 2800.2(a)—evading a peace officer—in Stanislaus Superior Court case #1469076 and was sentenced to three years' prison in the California Department of Corrections and Rehabilitation.

23.    On February 19, 2026, ATF SA Payton Smith—who has specialized training in the manufacture, origin, and identification of firearms and ammunition—examined the photographs of the .357, .38, and .223 caliber ammunition and the North American Arms Inc. .22 caliber revolver recovered from the scene. SA Smith reported that the .357, .38, and .223 caliber ammunition and the North American Arms Inc. .22 caliber revolver were not manufactured in California, and therefore, traveled in and affected, interstate commerce.

## IV.    CONCLUSION

24.    The above facts set forth probable cause to believe that CATZALCO violated Title 18, United States Code, Section 922(g)(1), felon in possession of a firearm and ammunition.  I request that an arrest warrant be issued for CATZALCO for this violation.

*Cortland Collins*

Cortland G. Collins
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) before me this ___13th___ day of March, 2026.

*Sheila K. Oberto*

THE HONORABLE SHEILA K.OBERTO
UNITED STATES MAGISTRATE JUDGE

Reviewed as to form by:

/s/ *Nicholas Karp*
Nicholas Karp
Assistant U.S. Attorney

COMPLAINT AFFIDAVIT                    9